UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HILL-ROM SERVICES, INC., *et al.*, )<br>    *Plaintiffs/Counter-Defendants*, )<br>  )<br>   *vs.* )<br>  )<br>STRYKER CORP., *et al.*, )<br>   *Defendants/Counter-Claimants.* ) | 1:11-cv-1120-JMS-DKL |

## ORDER GRANTING MOTION FOR PARTIAL STAY

Presently pending before the Court is Defendants/Counter-Claimants Stryker Corporation, doing business as Stryker Medical, and Stryker Sales Corporation's (collectively, "Stryker") Motion to Stay Certain Proceedings Pending Reexamination by the United States Patent and Trademark Office ("PTO"). [Dkt. 115.] Stryker asks for a stay on six of the patents-in-suit on which the PTO has granted Stryker's requests for reexamination.[1] Plaintiffs/Counter-Defendants Hill-Rom Services, Inc., Hill-Rom Company, Inc., and Hill-Rom Manufacturing, Inc. (collectively, "Hill-Rom") object to Stryker's stay request. [Dkt. 123.]

### I.
#### STANDARD OF REVIEW

Courts have inherent power to control their own dockets and stay proceedings. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). While this Court is generally reluctant to stay litigation, it recognizes that stays are often favored in patent infringement suits involving

---

[1] There are nine patents-in-suit in this action; however, Stryker only requested reexamination on two of the three groups of patents at issue—the Peer-to-Peer group (U.S. Patent Nos. 5,771,511 ('511 Patent), 7,237,287 ('287 Patent), and 7,568,246 ('246 Patent)) and the Controller Area group (U.S. Patent Nos. 7,506,390 ('390 Patent), 7,520,006 ('006 Patent), and 7,669,263 ('263 Patent)). Claim construction regarding the third group of patents is under advisement following a *Markman* hearing the Court held on October 31, 2012. [Dkt. 143.]

1

co-pending reexamination of the patents-in-suit by the PTO. *Cook Inc. v. Endologix, Inc.*, 2010 WL 325960, at *1 (S.D. Ind. 2010) (collecting cases).

The standard to determine whether a stay of litigation should be granted in a patent infringement action is based on three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the Court. *Cook*, 2010 WL 325960, at *1; *Centillion Data Sys., LLC v. Convergys Corp.*, 2005 WL 2045786, at *1 (S.D. Ind. 2005).

## II.
### BACKGROUND

Hill-Rom filed this patent infringement action against Stryker in the Western District of Wisconsin in April 2011. [Dkt. 1.] Stryker counterclaimed, alleging non-infringement and invalidity of the patents-in-suit. [Dkt. 29.] After a motion by Stryker, [dkt. 19], this action was transferred to this Court pursuant to 28 U.S.C. § 1404(a) in August 2011, [dkt. 51].

Stryker filed for reexamination on six of the nine patents-in-suit on July 20, 2012. [Dkt. 116 at 4.] Five of the requests were for *inter partes* reexamination and one was for *ex parte* reexamination.[2] [*Id.* at n.3.] *Inter partes* reexamination bars a petitioner from asserting that the claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review. 35 U.S.C. § 315(e)(2).

On August 15, 2012, Stryker moved for a stay on the six patents-in-suit on which it had moved for reexamination. [Dkt. 115.] Given the procedural posture of the case, *Markman*

---

[2] Stryker asserts that it could not move for *inter partes* reexamination on the sixth patent because *inter partes* reexamination is not available for patents filed before November 29, 1999, and the '511 patent application was filed in 1995. [Dkt. 116 at 4 n.3.] Hill-Rom does not dispute this assertion.

2

briefing only occurred on the three patents-in-suit that are not the subject of the motion to stay. [Dkt. 119.] Since the time that Stryker filed its motion requesting a partial stay, the PTO granted Stryker's reexamination requests, [dkt. 133], and will reexamine 35 claims in the six patents at issue, [dkt. 135 at 4]. The Court gave each party an opportunity to file a supplemental memorandum regarding the effect of the PTO granting reexamination, [dkts. 134; 135], and this issue is now ripe for ruling.

## III.
### DISCUSSION

The parties dispute whether the applicable factors weigh in favor of or against a stay. As a general matter, Stryker asserts that Hill-Rom cannot complain about Stryker invoking its reexamination rights because Hill-Rom put these patents at issue by filing a patent infringement action against Stryker. [Dkt. 116 at 9.] Stryker argues that Hill-Rom will not be overly prejudiced by a stay and that it will undoubtedly simplify the issues for trial and reduce the burden of litigation on the parties and this Court. [*Id.* at 9-19.]

Hill-Rom argues that it will be unduly prejudiced by a stay and that Stryker filed its petitions for reexamination and this stay request as a tactical maneuver. [Dkt. 123 at 1.] Hill-Rom emphasizes that Stryker is a direct competitor and points out that most claims survive reexamination in some form. [*Id.* at 3, 10-15.] Therefore, Hill-Rom contends that staying this litigation while reexamination occurs may only delay the relief to which Hill-Rom believes it is entitled instead of simplifying issues for trial or reducing the burdens of litigation. [*Id.* at 11-16.]

### A. Undue Prejudice or Tactical Disadvantage Factor

With regard to the first factor, Stryker claims that Hill-Rom will not be prejudiced by the Court granting a stay because the stay will enable Hill-Rom to avoid significant expenses associated with this litigation and the delay involved in the stay is not unduly burdensome given

the PTO's mandate to treat reexamination proceedings with "special dispatch." [Dkt. 116 at 9-12.] Stryker points out that in the five *inter partes* proceedings, it will be precluded from re-litigating any claim that was or could have been raised during the reexamination proceedings. Additionally, Stryker alleges that Hill-Rom's delay in bringing this infringement suit, even though they are direct competitors, significantly reduces Hill-Rom's assertions of prejudice. [Dkt. 116 at 11.]

Hill-Rom alleges prejudice because Stryker and Hill-Rom are direct competitors in the market. [Dkt. 123 at 3.] Hill-Rom also alleges prejudice because if a stay is granted, it will not be able to pursue injunctive relief. [Dkt. 123 at 4-5.] Additionally, Hill-Rom argues that a stay would allow Stryker to take inconsistent positions between the PTO and this Court. [Dkt. 123 at 6.] Hill-Rom further argues that it will be prejudiced by the potential loss of witness testimony if a stay is granted. [Dkt. 123 at 8.]

It is well-established that the delay inherent in the reexamination process by itself does not constitute undue prejudice. *CCP Sys. AG v. Samsung Electronics Corp.*, 2010 WL 5080570, at *3 (D. N.J. 2010) (collecting cases from various district courts). The parties' status as direct competitors can weigh against a stay because it increases the likelihood of undue prejudice, *Interwoven, Inc. v. Vertical Computer Sys., Inc.*, 2012 WL 761692, *3 (N.D. Cal. 2012); however, attempts by a patentee to argue undue prejudice are undermined if it has elected not to pursue a preliminary injunction, *see EI Du Pont De Nemours & Co. v. MacDermid Printing Solutions LLC*, 2012 WL 2995182, at *5 (D. N.J. 2012) ("While the Court appreciates [the patentee's] concern that [the alleged infringer] will continue to sell its allegedly infringing product during the course of the stay, thereby further eroding [the patentee's] market share and resulting in substantial loss of profits and goodwill, the Court notes that [the patentee] did not

4

seek a preliminary injunction in this matter."); *Studer Prof'l Audio GmbH v. Calrec Audio Ltd.*, 2012 WL 3061495, at *2 (D. N.J. 2012) (concluding that patentee had not shown undue prejudice because it did not seek a preliminary injunction and even under a stay would "still have all of [its] legal and equitable remedies available when the stay is lifted"). Similarly, in this case, Hill-Rom has not sought a preliminary injunction.

The Court concludes that although Hill-Rom has shown that it will suffer some prejudice because Stryker is a direct competitor, it has not shown that a stay will result in undue prejudice. Hill-Rom's primary argument is that if a stay is granted, the delay from the reexamination process will unduly prejudice it because its patents will expire by the time the reexamination proceedings conclude, preventing it from obtaining injunctive relief. [Dkt. 123 at 3.] Even nineteen months into this litigation, Hill-Rom has not moved for injunctive relief. This suggests that Hill-Rom believes it has an adequate remedy at law and significantly undercuts its argument that a stay will cause it undue prejudice. Perhaps more importantly, Hill-Rom does not deny Stryker's assertion that Hill-Rom chose to wait more than six years after the allegedly infringing Stryker product was released to pursue this infringement action. [Dkt. 126 at 3.] Therefore, any prejudice Hill-Rom will suffer regarding the approaching expiration of its patents is largely of its own making.

Additionally, even if this Court adhered to an expedited schedule, it is unlikely that the litigation would conclude prior to the expiration of those patents in 2013 because a trial date has not been set and *Markman* briefing has not occurred on these patents. Thus, even if this Court denied Stryker's motion and Hill-Rom ultimately demonstrated an entitlement to injunctive relief, it is likely that the patents at issue will either be expired or so close to expiring that any lost opportunity to obtain injunctive relief—again, for which Hill-Rom has not moved—would

5

not be prejudicial.  *See, e.g.*, *Cook, Inc.*, 2010 WL 325960 at *2.  For these reasons, and because the delay associated with the reexamination process is not in and of itself unduly prejudicial, the Court concludes that Hill-Rom has not shown that a partial stay will subject it to undue prejudice.

As for the possibility of a tactical disadvantage, Hill-Rom argues that Stryker's "undue delay in seeking reexamination . . . confirms the tactical nature of its requests." [Dkt. 123 at 8.] Prior to this infringement action, however, Stryker had no incentive to undertake a prior art investigation or proceed with compiling reexamination requests. [Dkt. 126 at 6.] The Court finds that the timing of Stryker's request is not inherently suspicious because it occurred after settlement discussions failed and before *Markman* briefing occurred on these patents. [*Id.* at 7.] Additionally, although Hill-Rom asserts that it will be at a tactical disadvantage because Stryker can assert inconsistent positions before the PTO and this Court, [dkt. 123 at 6-8], it ignores that Stryker filed *inter partes* examination requests on all of the patents for which that was an option; therefore, Stryker is barred from asserting that the claim is invalid on any ground that it raised or reasonably could have raised during *inter partes* review, 35 U.S.C. § 315(e)(2). Finally, any prejudice Hill-Rom claims will result from the passage of time and the potential loss of witness recollection is mitigated by the fact that product manuals, source code, and engineering specifications describing the patented inventions and the accused products will survive.

For these reasons, the Court concludes that Hill-Rom has not shown it will suffer undue prejudice or a tactical disadvantage if the Court issues a stay on the six patents undergoing reexamination.[3]

### B. Simplifying the Issues Factor

With regard to the second factor, Stryker asserts that a stay pending the outcome of reexamination will significantly simplify the issues and streamline the trial because the Court can rely on the PTO's "specialized expertise" in these matters. [Dkt. 116 at 12.] Stryker emphasizes that the PTO has already granted reexamination on all six of the patents at issue and points to the PTO statistics showing that the vast majority of claims do not survive the reexamination process unaltered. [Dkts. 116-1; 116-2; 134.]

Hill-Rom argues that reexamination will not simplify the case because most claims survive reexamination either intact or as amended. [Dkt. 123 at 10-11.] Hill-Rom further argues that the validity of Stryker's defenses will not be determined on reexamination, so those issues will not be clarified by the PTO. [Dkt. 123 at 13.] Hill-Rom admits that the *inter partes* reexamination will have a preclusive effect on those five patents but emphasizes that the *ex parte* reexamination of the '511 Patent will lack that same preclusive effect. [Dkt. 123 at 14.]

The PTO possesses specialized knowledge and expertise when it comes to matters of technology, patentability, and claim scope; thus, a decision by the PTO on reexamination will certainly simplify any issues necessitating a trial after reexamination. *See Lincoln Nat'l Life Ins. Co. v. Transamerica Fin. Life Ins. Co.*, 2009 WL 1108822, at *4 (N.D. Ind. 2009) ("[I]t is

---

[3] Hill-Rom proposes that the Court can mitigate the harm by deferring a stay until after claim construction on the six patents-in-suit at issue in this motion. [Dkt. 123 at 17.] But the PTO has already granted reexamination on the six patents and it is statistically unlikely that all 35 claims will survive unaltered. [Dkts. 116-1; 116-2.] Given this procedural posture, proceeding to claim construction on these patents would require immense effort and resources by the parties and the Court that could ultimately prove unnecessary or duplicative.

virtually undeniable that a stay followed by a PTO reexamination will simplify the issues in the case and streamline the proceedings."). Furthermore, any conclusion reached by the PTO regarding reexamined patents provides expert guidance and simplifies those issues for trial. *See Spa Syspatronic, AG v. Verifone, Inc.*, 2008 WL 1886020, at *1 (E.D. Tex. 2008) ("[W]hether or not the PTO ultimately amends or invalidates a patent's Claims during reexamination, the PTO's reexamination provides the Court with an expert funneling of the issues for trial.").

Hill-Rom asserts that Stryker attempted a "scattershot" approach to reexamination. [Dkt. 123 at 12.] But that argument is wholly undermined by the fact that the PTO has already granted reexamination on all six patents at issue herein, [dkt. 133], and on 77% of Stryker's claim requests, [dkt. 135 at 5]. Specifically, the PTO found that Stryker, the requester, has a reasonable likelihood of prevailing in the *inter partes* reexamination with respect to 28 claims in the five patents undergoing *inter partes* reexamination, [dkts. 133-1 at 5 (granting with regard to three claims in the '246 Patent); 133-3 at 5 (granting with regard to five claims in the '287 Patent); 133-5 at 5 (granting with regard to seven claims in the '006 Patent); 133-8 at 5 (granting with regard to five claims in the '390 Patent); 133-10 at 6 (granting with regard to eight claims in the '263 Patent)], and that Stryker raised a substantially new question of patentability regarding seven claims in the '511 Patent undergoing *ex parte* reexamination, [dkt. 133-7 at 5].

Based on statistical history, 89% of *inter partes* reexaminations and 77% of *ex parte* reexaminations result in claims either being cancelled, disclaimed, or changed. [Dkts. 116-1 at 2; 116-2 at 3.] Therefore, while the ultimate outcome of the reexamination proceedings remains unknown, there is a high likelihood that at least some of Hill-Rom's claims will be altered. If reexamination results in canceled or amended claims, which the statistics suggest is likely, the issues remaining in this litigation could be greatly simplified and materially different. As other

courts have found, this suggests that the PTO reexamination will simplify the issues in the case and streamline the proceedings, particularly in light of the PTO's specialized expertise. *Lincoln Nat'l Life Ins. Co.*, 2009 WL 1108822, at *4. Moreover, because Stryker moved for *inter partes* reexamination on all of the patents for which that process was available, it will be barred from asserting that a claim is invalid on any ground that it raised or reasonably could have raised during that *inter partes* review.[4] 35 U.S.C. § 315(e)(2). For these reasons, the Court finds that the second factor weighs heavily in favor of issuing a stay on the six patents undergoing reexamination.

### C. Reducing Burden Factor

With regard to the third factor, Stryker asserts that a stay will reduce the burden of litigation on both parties and the Court because the close of discovery is months away; claim construction hearings and briefing has not taken place on the patents at issue in this motion; expert discovery and dispositive motion deadlines have not been established; and a trial date has not been set. [Dkt. 116 at 14.] Stryker also notes that staying the current proceedings pending reexamination will prevent duplicative proceedings in the future. [Dkt. 116 at 15.]

Hill-Rom claims that a stay pending reexamination will not reduce the litigation burden on the parties or the Court because there are three patents not subject to reexamination. [Dkt. 123 at 15.] Hill-Rom further claims that a significant amount of overlapping discovery has already taken place, which should preclude Stryker from alleging a reduction of future litigation burdens on the parties and the Court. [Dkt. 123 at 16.]

---

[4] Contrary to Hill-Rom's assertion, the Court does not find the *ex parte* review on the '511 Patent to weigh against a stay because Stryker could not move for *inter partes* review on that patent because it was filed in 1995. Likewise, Hill-Rom's proposed alternative to stay the litigation on the patents undergoing *inter partes* review but not on the '511 patent is unworkable because it is undisputed that the '511 patent is related to at least two of the patents undergoing *inter partes* review. [Dkt. 135 at 7.]

In reexamination proceedings, there is a significant probability that the PTO will alter the claim scope and, therefore, that both parties will waste resources litigating issues that will be rendered moot by the PTO's findings. *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, 2004 WL 422697, at *2 (N.D. Ill. 2004). Therefore, should reexamination result in the amendment or cancellation of some of the asserted claims, a stay prior to the onset of trial is likely to save both parties substantial costs and prevent duplicative, and possibly inconsistent, proceedings between the Court and the PTO. *Cook*, 2010 WL 325960, at *2.

The Court concludes that a stay on the six patents undergoing reexamination will reduce the burden on the parties and on the Court. The litigation on these patents is at a relatively early stage—deposition discovery is in its infancy, *Markman* briefing has not occurred, and a trial date has not been set. [Dkt. 116 at 3.] The Court recognizes that both parties have incurred significant expenses and that discovery on the six patents at issue may overlap with the ongoing discovery on the three patents that are not.[5] But because the PTO has granted reexamination on 35 claims from the six patents at issue and statistics suggest that the vast majority of these claims will be altered in some respect, the Court concludes that a stay would undoubtedly reduce the parties' burden and the burden on this Court by avoiding duplicative or potentially unnecessary work on the patents undergoing reexamination.

The Court finds it to be significant that Stryker moved for *inter partes* reexamination on each of the patents for which that process was an option, thereby precluding itself from raising issues that were brought or could have been brought before the PTO. Accordingly, the burden

---

[5] Stryker's stay request on two-thirds of the patents has not halted the progress of the litigation on the remaining third. While the parties and the Court will continue to expend resources litigating the three patents not subject to reexamination, those patents are distinct enough from the patents being stayed that the parties did not refer to them in *Markman* briefing on that third.

10

on the parties and the Court will be significantly reduced after the PTO applies its specialized expertise to the claims on reexamination.

For these reasons, the Court finds that the third factor weighs in favor of issuing a stay on the six patents undergoing reexamination.

### D. Weighing the Factors

The Court concludes that each of the three factors weighs in favor of granting a stay on the six patents on which the PTO has granted reexamination. The Court finds its particularly compelling that the reexamination will be *inter partes* and preclusive on five of the six patents, that Hill-Rom does not dispute that it waited six years after the first accused product to file this action, and that Hill-Rom has not moved for injunctive relief. Additionally, the PTO has granted reexamination on 35 claims from these six patents, and statistics suggest that the vast majority of these claims will be altered in some fashion after the PTO applies its specialized expertise. Accordingly, the parties and the Court will benefit from the streamlined and simplified issues that will emerge from reexamination, even if some or all of the claims survive. For these reasons, the Court grants Stryker's motion for a partial stay on the six patents on which the PTO has granted reexamination.

## IV.
### CONCLUSION

For the foregoing reasons, this Court **GRANTS** Stryker's motion for a partial stay pending reexamination by the PTO of six of the nine patents in suit—U.S. Patent Nos. 5,771,511; 7,237,287; 7,568,246; 7,506,390; 7,520,006; and 7,669,263. [Dkt. 115.] The parties are **ORDERED** to file any decisions by the PTO on the pending petitions for reexamination within **7 days** of receiving those decisions. Either party may move to lift the stay after the PTO decides all of the pending petitions for reexamination or at an earlier time if such a motion is

supported by good cause. The *Markman* briefing on the three patents not subject to this stay remains **UNDER ADVISEMENT** and will be ruled on in due course.

   11/20/2012

                  */s/ Jane Magnus-Stinson*
                  Hon. Jane Magnus-Stinson, Judge
                  United States District Court
                  Southern District of Indiana

**Distribution via ECF only:**

Paul D. Bond
KIRKLAND & ELLIS, LLP
daniel.bond@kirkland.com

David K. Callahan
KIRKLAND & ELLIS LLP
david.callahan@kirkland.com

Steven E. Derringer
BARTLIT BECK HERMAN PELENCHAR & SCOTT, LLP
steven.derringer@bartlit-beck.com

Rachel N. Farrington
KIRKLAND & ELLIS, LLP
rachel.farrington@kirkland.com

Matthew R. Ford
BARTLIT BECK HERMAN PELENCHAR & SCOTT LLP
matthew.ford@bartlit-beck.com

Andrew W. Hull
HOOVER HULL LLP
awhull@hooverhull.com

Christopher J. Lind
BARTLIT BECK HERMAN PELENCHAR & SCOTT, LLP
chris.lind@bartlit-beck.com

Daniel James Lueders
WOODARD EMHARDT MORIARTY MCNETT & HENRY, LLP
lueders@uspatent.com

J. Scott McBride

BARTLIT BECK HERMAN PELENCHAR & SCOTT LLP
scott.mcbride@bartlit-beck.com

Brian C. Swanson
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
brian.swanson@bartlit-beck.com

Benjamin J. Whiting
BARTLIT BECK HERMAN PELENCHAR & SCOTT, LLP
ben.whiting@bartlit-beck.com

Mary E. Zaug
KIRKLAND & ELLIS, LLP
mary.zaug@kirkland.com

Steve Edward Zlatos
WOODARD EMHARDT MORIARTY MCNETT & HENRY, LLP
stevezlatos@uspatent.com